IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent, ) | |
| ) | No. 04 C 7056 |
| v. ) | |
| ) | Wayne R. Andersen |
| AARON POE, ) | District Judge |
| ) | |
| Petitioner. ) | |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on petitioner Aaron Poe's motion [1] to vacate, set-aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the petition is denied.

## BACKGROUND

Beginning in 1988 and continuing until July 2000, Aaron Poe, together with others, devised and participated in a scheme to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises. As part of the scheme, petitioner fraudulently obtained life insurance policies for individuals who were elderly or in poor health, some with terminal or life-threatening illnesses, or whose lifestyles placed them at greater risk of an early death, without the knowledge of the insured individuals. Petitioner obtained these policies by making and causing others to make false representations in applications for life insurance policies. Petitioner named himself as beneficiary on these fraudulent policies, either when the policies were initially issued or through the subsequent use of change of beneficiary forms.

Petitioner filed claims with insurance companies seeking the payment of death benefits following the deaths of some of the individuals in whose name petitioner had fraudulently obtained insurance. In 1995, petitioner made such a claim to American General and fraudulently obtained approximately $99,500.

On July 11, 2000, petitioner was charged with two counts of mail fraud. On March 4, 2003, petitioner, represented by court-appointed counsel, pled guilty to both counts of the indictment. A written plea agreement signed by the parties set out a detailed factual basis for the plea, the maximum statutory penalties for the offense, a preliminary guidelines calculation, and the rights the defendant was relinquishing by virtue of his guilty plea. Paragraph 12 of the plea agreement stated as follows:

> The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. the defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver of this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

Plea Agreement, at ¶ 12.

On October 28, 2003, petitioner was sentenced to sixty-three months in prison. On November 1, 2004, petitioner filed the instant petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

2

## DISCUSSION

Under section 2255, the federal version of habeas corpus, an individual can petition a district court to vacate, set aside, or correct a federal sentence. 28 U.S.C. § 2255 (2006). Collateral relief under section 2255 is available only in limited circumstances. The statute provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*Id.* Such relief is therefore limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). The Supreme Court has held that a constitutional claim of ineffective assistance of counsel raised for the first time in a section 2255 petition is not procedurally defaulted. *Massaro v. United States*, 123 S. Ct. 1690, 1694, 155 L. Ed. 2d 714 (2003).

### I. Ineffective Assistance of Counsel Claim

Petitioner advances the constitutional argument that he received ineffective assistance of counsel. When analyzing a claim for ineffective assistance of trial counsel, the court applies the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To successfully establish ineffective assistance, petitioner must provide evidence that his attorney's performance fell below an objective standard of reasonableness (the

"performance prong") and that the counsel's deficiencies prejudiced his defense (the "prejudice prong"). *Id.* at 688-92. The performance prong requires petitioner to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Id.* at 690. Based on the totality of the circumstances, the court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.* Courts begin this analysis with a strong presumption that counsel rendered reasonably effective assistance. *United States v. Moralez*, 964 F.2d 677, 683 (7th Cir. 1992). The court also presume that there is no prejudice by any error committed. *United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir. 1991).

The prejudice prong requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695. Failure to satisfy either the performance prong or prejudice prong of the *Strickland* test is fatal to an ineffectiveness claim. *Chichakly v. United States*, 926 F.2d 624, 630 (7th Cir. 1991).

### A. The Plea Agreement

As part of his claim that he received ineffective assistance of counsel, petitioner alleges that he repeatedly informed his attorney that he did not understand the plea agreement process or the terms of the agreement itself. Petitioner also claims that his counsel urged him to sign the plea agreement without full knowledge of its significance. The record does not support these allegations.

The plea hearing occurred on March 4, 2003. The Seventh Circuit has consistently held that a defendants' statements at plea hearings are presumed to be true. *See United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004); *United States v. Suggs*, 374 F.3d 508, 520 (7th Cir. 2004); *United States v. Redig*, 27 F.3d 277, 280 (7th Cir. 1994). At the beginning of the hearing, petitioner was sworn in and informed that if he had any questions for the court he should feel free to ask. Plea Tr. at 2. The court also informed petitioner that he was free to take time to speak with his attorney. *Id.* at 2. Petitioner then affirmed that his plea was entirely voluntary, acknowledged that he had read the charges contained in the indictment, and stated that his counsel had explained those charges to him. *Id.* at 3. Petitioner further testified that he understood the nature of the charges against him and also affirmed that he understood the rights he was waiving by pleading guilty. *Id.* at 3-7, 12. Finally, the court asked petitioner whether he was pleading guilty due to any threats, promises, representations or agreements not set forth in the plea agreement, and he assured the court he was not. *Id.* at 14. The Seventh Circuit has held "the defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity...." *United States v. Seybold*, 979 F.2d 582, 588 (7th Cir. 1992) (quoting *United States v. Darling*, 766 F.2d 1095, 1101 (7th Cir. 1985)).

Petitioner makes no argument to rebut the presumption of truth given to his statements at the plea hearing. Petitioner's responses at the plea hearing contradict his allegations that he did not understand the plea agreement process and the terms of the agreement. To the contrary, petitioner's responses directly affirmed that his plea was knowing and voluntary. Petitioner also affirmed that he was advised of and understood the terms of the plea agreement and their

5

significance. Based on petitioner's statements at the plea hearing, the court finds that petitioner has failed to show that his trial counsel's conduct fell below an objective level of reasonableness.

### B. Right to Object to the PSR

Petitioner also claims that his counsel did not inform him of his right to object to the contents of his presentence report ("PSR"). This allegation also is not supported by the record.

Petitioner was sentenced on October 28, 2003. At the sentencing hearing, the court asked petitioner if he had read the PSR and discussed it with his counsel. Sentencing Tr. at 2. Petitioner responded in the affirmative. *Id.* at 2. The court then asked defense counsel if there were any facts in the PSR that petitioner would like to challenge, and counsel responded that petitioner did not wish to challenge any of the facts. *Id.* Petitioner's statements during the sentencing hearing are not consistent with his claim that his counsel did not inform him of his right to object to the contents of the PSR. Petitioner had the opportunity to object to the PSR and chose not to. Petitioner has failed to show that his counsel's conduct fell below an objective level of reasonableness.

### C. Advice Regarding Avenues of Relief

Petitioner next claims that his counsel gave him incorrect and insufficient advice concerning his right to collaterally attack his sentence, and that counsel improperly advised him after his sentence was entered that he had no further avenues of relief. The court rejects both of these arguments.

Petitioner waived any right to collaterally attack his sentence when he entered into his plea agreement. Paragraph 12 of the agreement clearly states "the defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack,

including but not limited to a motion brought under Title 28, united States Code, Section 2255." Plea Agreement, at ¶ 12. Petitioner affirmed his understanding of this portion of the plea agreement at the plea hearing. Plea Tr. at 12. Petitioner offers no evidence in support of his claim, and his affirmative response at the plea hearing supports the conclusion that he knowingly waived his right to collaterally attack the sentence.

Following the sentencing, defense counsel advised petitioner that no options for relief remained. Specifically, in a March 26, 2004 letter to petitioner, his counsel stated, "there is nothing I can do to get your sentence changed." Pet. Mot. at Ex. C. Counsel was correct. Pursuant to 18 U.S.C. § 3582, the court could no longer modify the defendant's term of imprisonment. Furthermore, under the terms of paragraph 12 of the plea agreement, petitioner expressly waived the right to challenge his sentence on any grounds other than involuntariness and ineffective assistance of counsel.

### D. Documents Withheld from NLPA

Petitioner also claims that his counsel withheld documents from the National Legal Professional Associates ("NLPA"). In support of this claim, petitioner attached a few select pages from a September 22, 2004 memorandum he received from NLPA. The NLPA memorandum states that additional materials, such as the PSR and the sentencing transcripts, may influence the NLPA's analysis of petitioner's case. Nothing in the NLPA memorandum supports petitioner's claim that his counsel withheld documents. Petitioner has failed to address how these documents would support his claims. There is no evidence to support petitioner's claim that his attorney withheld documents from the NLPA.

### E. Motion for Downward Departure Due to Petitioner's Health

Petitioner claims that his attorney failed to request a downward departure under section 5H1.4 of the Sentencing Guidelines based on concerns for petitioner's health. Petitioner claims to suffer from "gastric cancer (stomach), diabetes, hypertension, a mass in his left kidney, and sarcoidosis." Pet. Mot. at 3. Petitioner provided a medical report as evidence in support of this claim.

Although the medical report appears to substantiate petitioner's alleged medical condition, counsel's decision not to file a motion for downward departure does not amount to ineffective assistance of counsel. While it is true that a downward departure may be appropriate because of extraordinary physical impairment (*see* U.S.S.G. § 5H1.4), the Seventh Circuit has held:

> [A]n impairment is extraordinary when medical treatment within the institution would be markedly inferior to that available outside, or when the medical condition is one that shortens the life span of institutionalized persons compared with those at liberty.

*United States v. Krilich*, 257 F.3d 689, 692-693 (7th Cir. 2001). Petitioner has put forth no evidence to support a conclusion that any of his numerous ailments conform with this definition of an extraordinary impairment. Petitioner has access to medical care while in custody. Additionally, at the sentencing hearing, the court noted that petitioner will likely receive superior health care while incarcerated. Sentencing Tr. 12-13. There is no merit to petitioner's argument that his attorney's decision not to file a motion for downward departure due to petitioner's health constituted ineffective assistance of counsel.

### F. Use of Force to Enter Petitioner's Residence

Petitioner alleges that his attorney instructed the police to forcefully enter petitioner's residence and place petitioner under arrest. Petitioner alleges that his attorney made this request to force petitioner to sign the plea agreement. As a result of this alleged use of force, petitioner claims that his case was prejudiced. The record does not support this argument.

Counsel did ask the police for assistance in reaching petitioner, but only did so because petitioner failed to respond to his phone calls and knocks at the door. There is no evidence to support petitioner's claim that he was arrested at this time. Counsel's use of the police certainly does not fall below an objective standard of reasonableness. Rather, the police were used as a means to reach petitioner, and counsel clearly was acting in petitioner's best interest by doing so. The use of the police to reach petitioner did not prejudice him, and there is no merit to petitioner's claim that his attorney's actions amount to ineffective assistance of counsel.

### G. Conflict of Interest

Petitioner's final argument is that his attorney, as appointed by the court, had a conflict of interest that adversely affected his representation of petitioner and violated petitioner's Sixth Amendment right to effective counsel. Although petitioner cites a great number of cases in support of this argument, those cases only support the idea that legal representation should be conflict-free and adhere to accepted standards of ethical conduct. *See*, e.g. *Spreitzer v. Peters*, 114 F.3d 1435, 1450 (7th Cir. 1997); *Garcia v. Brunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994). However, none of these cases hold that court appointed attorneys are faced with an immediate conflict of interest due to loyalties to the government.

Petitioner also argues that a conflict of interest existed because his attorney accepted payment from an unknown third party with interests adverse to the petitioner's. Petitioner fails to offer any evidence in support of this claim, and the court concludes that defense counsel had no conflict of interest in his capacity as petitioner's court appointed attorney.

**II. Request for Leave to Amend**

Petitioner concludes his petition by requesting leave to supplement the petition with additional evidentiary support. Petitioner fails to show how or why additional evidence would support his claims. This request is denied.

## CONCLUSION

For the foregoing reasons, Aaron Poe's motion [1] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied, terminating the case. This is a final and appealable order.

Wayne R. Andersen
United States District Court

Dated: May 5, 2006

10